Nathan NERLAND, Daniel Williams–
Goldberg, and James Geckler, individ-
ually and on behalf of all others simi-
larly situated, Plaintiffs,

v.

CARIBOU COFFEE COMPANY,
INC., Defendant.

No. 05–CV–1847 (PJS/JJG).

United States District Court,
D. Minnesota.

May 17, 2007.

Charles Nauen, Jonathan Cuneo and William Gengler, for Plaintiffs.

Joseph Sokolowski, Lindsay Zamzow and Michael Ross, for Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

PATRICK J. SCHILTZ, District Judge.

This matter is before the Court on the parties' objections to Magistrate Judge Jeanne J. Graham's April 6, 2007 Report and Recommendation ("R & R"). Judge Graham recommends denying defendant's motion for decertification of the federal-law class, granting plaintiffs' motion for certification of a state-law class, and denying plaintiffs' motion to reopen the opt-in period for the federal-law class. The Court has conducted a de novo review under 28 U.S.C. § 636(b)(1) and Fed. R.Civ.P. 72(b). Based on that review, the Court finds that no oral argument is necessary and adopts Judge Graham's thorough R & R. At bottom, the Court agrees with Judge Graham that, just as defendant was able to determine on a collective basis that all of its store managers were employed "in a bona fide executive ... capacity," so, too, this Court can determine on a collec-

tive basis whether defendant's decision was correct.

Judge Graham recommends certifying the state class under Fed.R.Civ.P. 23(b)(3), which requires that notice be given to class members. Accordingly, the parties are directed to meet and confer for the purpose of drafting a mutually acceptable notice to all potential state class members that complies with Rule 23. The draft of the notice must be submitted to the Court within fifteen days of the date of this order.

Because the state class members who will receive this notice should have already received a notice about the federal opt-in claim, the new notice must explain why the class members are receiving a second notice and, in particular, highlight the difference between the opt-in procedure applicable to the federal claim and the opt-out procedure applicable to the state claim. In the event that the parties are unable to agree on a draft notice, each party must submit a draft within fifteen days from the date of this order, and the Court will then select the most appropriate notice.

## ORDER

Based on all of the files, records, and proceedings herein, the Court ADOPTS Judge Graham's Report and Recommendation [Docket No. 554]. IT IS HEREBY ORDERED THAT:

1. Defendant's motion for decertification [Docket No. 400] is DENIED.

2. Plaintiffs' motion to reopen the opt-in period [Docket no. 526] is DENIED.

3. Plaintiffs' motion for class certification [Docket No. 472] is GRANTED to the extent described in the R & R.

4. As described above, the parties are directed to meet and confer for the purpose of drafting a notice to all

potential state class members, and must submit a draft notice within fifteen days from the date of this order.

## REPORT AND RECOMMENDATION

JEANNE J. GRAHAM, United States Magistrate Judge.

### I. Introduction

This is a case about overtime compensation. Plaintiffs are former and current store managers of Defendant Caribou Coffee, Inc. ("Caribou"), who claim Caribou improperly deprived them of overtime pay by misclassifying them under the executive exemption of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Minnesota Fair Labor Standards Act ("MFLSA"), Minn.Stat. § 177.21, *et seq.* Plaintiffs seek to adjudicate their claims collectively and seek the Court's final approval to proceed in that manner. Caribou contends its store managers are properly classified under the statutory requirements for overtime exemptions, and that any determination of whether a particular plaintiff has been improperly classified as exempt from overtime compensation requires an examination of the store manager's individual *daily* employment circumstances, making collective adjudication of the plaintiffs' claims improper.

Three motions are currently before this Court. In the first, Caribou Coffee Company, Inc.'s Motion for Decertification (Doc. No. 400), defendant seeks a court order finding plaintiffs are not "similarly situated" as required under the FLSA, and ordering decertification of the conditional FLSA collective action in this case. Plain-

tiffs oppose decertification of the FLSA collective action, and have filed a Motion for Class Certification (Doc. No. 472), seeking Rule 23 certification of a Minnesota class for the collective adjudication of the state MFLSA claims. In the third pending motion, Plaintiffs' Motion for Order to Reopen Opt–In Period to Eligible Class Members (Doc. No. 526), plaintiffs seek permission to reopen the opt-in period associated with the FLSA collective action in order to send opt-in notices to newly hired/promoted Caribou store managers. These matters have been referred to the undersigned pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons stated herein, the undersigned recommends defendant's motion for decertification of the FLSA collective action be denied, plaintiffs' motion for certification of a Minnesota state class be granted as modified herein, and plaintiffs' request to reopen the opt-in period be denied.

### II. Factual and Procedural Background

Caribou is the second largest speciality coffee company in the United States, with 345 stores in 13 states.[1] Over 150 Caribou stores are in Minnesota. Each Caribou store has one store manager. Caribou store managers are all salaried employees, and are all classified as employees who are "exempt" from overtime compensation pursuant to applicable federal and state labor laws. The position of store manager is the only position at a Caribou store classified as exempt from overtime pay. Caribou utilizes a single job description for all of its store managers, the substance of which has changed little during the time period relevant to this lawsuit. Caribou

---

1. These facts are taken from the October 2005 affidavit and deposition transcripts of Karen McBride, Vice President of Human Resources for Caribou. (*See* Doc. Nos. 413, 444 and 445). According to more recently filed motion papers, the total number of Caribou stores has grown to over 400. (*See* Doc. No. 529, Ex. B.).

operates under a uniform supervisory structure whereby store managers report to and are supervised by district managers, who in turn report to regional directors of operations. Caribou is currently divided into four regions. Each region ranges in size from as few as one district to twelve districts. Currently there are approximately forty to forty-five districts total. District sizes range from five to eighteen stores. Between May 2002 and May 2005, approximately 650 Store Managers have either worked for or are presently working for Caribou.

Plaintiffs assert claims for unpaid overtime compensation under the FLSA and the MFLSA on behalf of themselves and all other former and current Caribou store managers [2] during the period of May 2002 to the present for the claims under the FLSA, and May 2003 to the present for the claims under the MFLSA.[3] (*See* Doc. No. 1, Ex. A., Complaint ¶¶ 2, 5). Plaintiffs contend Caribou willfully misclassified and continues to misclassify its store managers as exempt employees for purposes of the FLSA and the MFLSA, and, as a result, denied and continues to deny its store managers overtime compensation to which they claim they are entitled. (*See id.*). Plaintiffs seek damages for unpaid overtime compensation, equitable relief and attorneys fees. (*See id.*).

Plaintiffs previously sought and received conditional certification of a FLSA collective action from United States Magistrate Judge Franklin Noel, and notice of the pendency of the collective action was sent to potential claimants. (*See* Doc. No. 45).

Approximately 300 consent notices have been received. The Court authorized individualized discovery for eighty-five randomly selected opt-in plaintiffs through completion of questionnaires and a limited number of depositions. (*See* Doc. No. 380). The contents of these questionnaires, along with the depositions and the discovery exchanged between the named plaintiffs and defendant comprise the factual record presented to the Court for the purposes of the instant motions.

## III. Discussion

### A. Defendant's Motion for Decertification

Caribou moves to decertify the conditional collective action on the grounds that plaintiffs' challenge to their status as exempt employees requires a fact intensive inquiry and discovery has established that the named and opt-in plaintiffs are not "similarly situated" for the purposes of the FLSA collective action. Plaintiffs respond that discovery has revealed the named plaintiffs and the opt-in plaintiffs are similarly situated for the purposes of adjudicating their claims collectively under the FLSA, and that decertification would be both improper and inefficient.

There is little dispute that the central issue to be decided here is the legality of Caribou's classification of its store managers as employees exempt from overtime compensation under the executive exemption of the FLSA. Under the FLSA, all covered employees must be paid one and one-half times their regular rate of pay for hours worked in excess of forty per week.

---

**2.** This action was originally commenced in state court. Defendant removed the case to federal court. Managers-in-training were also identified as potential claimants in the original Complaint, but have subsequently been dismissed pursuant to the parties' stipulation.

**3.** Plaintiffs now contend the proper MFLSA class definition for this action commences in May 2002 because the Complaint alleges Caribou willfully violated the MFLSA, and the limitations period of such allegations is three years. *See* discussion *infra* at III.B.2.d.

29 U.S.C. § 207(a)(1). An employer that violates this provision can be held liable for unpaid overtime compensation plus an equal amount as liquidated damages. 29 U.S.C. § 216(b). Employers are not, however, required to provide overtime benefits to any employee employed in a bona fide executive capacity (those employees are referred to as "exempt"). 29 U.S.C. § 213(a)(1). Caribou classifies its store managers under the executive exemption, meaning they are not required to pay the store managers overtime compensation no matter how many hours they work in a week.

Employees may bring suit under the FLSA on their own behalf and on behalf of all those who are "similarly situated." *See id.* Section 216(b) sets forth two requirements for the adjudication of claims as collective actions: (1) the plaintiffs must be "similarly situated" and (2) all party plaintiffs must give their written affirmative consent to participate in the action. *See id.* Thus, similarly situated plaintiffs are permitted to "opt-into" the lawsuit. This type of statutory class action is unlike the class action procedures under Federal Civil Rule of Procedure 23 where parties are automatically included in the class unless they "opt out." *See* Fed.R.Civ.P. 23(c)(2); *Kloos v. Carter–Day Co.,* 799 F.2d 397 (8th Cir.1986); *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1212 (5th Cir.1995);[4] *Smith v. Heartland Automotive Services, Inc.,* 404 F.Supp.2d 1144, 1149 (D.Minn.2005) (Kyle, J.).

Section 216 does not define "similarly situated." *See Thiessen v. General Elec. Capital Corp.,* 267 F.3d 1095, 1103 (10th Cir.2001) (ADEA case); *Heartland,* 404 F.Supp.2d at 1149. In order to determine whether the named plaintiffs and the opt-in plaintiffs are similarly situated for the purposes of section 216(b), federal courts have used varying standards. Notably, the Eighth Circuit Court of Appeals has not directly spoken regarding the standard that should be used by district courts therein. However, the cases from the District of Minnesota reveal that this district has adopted the two-stage approach first articulated in *Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J.1987). *See e.g., Severtson v. Phillips Beverage Co.,* 141 F.R.D. 276, 279 (D.Minn.1992) (Alsop, J.) (ADEA claim); *Carlson v. C.H. Robinson Worldwide, Inc.,* Civ. Nos. 02–3780, 02–4261 2006 WL 2830015 (D.Minn. September 26, 2006) (Ericksen, J.); *Heartland,* 404 F.Supp.2d 1144;.

The first stage, or the "notice stage," usually occurs early on in the lawsuit, when the Court determines whether notice of the action should be given to putative collective action members. *See Carlson,* 2006 WL 2830015 at *3; *Heartland,* 404 F.Supp.2d at 1149. Because the court has minimal evidence before it, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. *Carlson,* 2006 WL 2830015 at *3.

The similarly situated analysis is undertaken again at the second stage of the analysis when the defendant moves for decertification of the collective class. *See id.* During this second stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. *See id.; Heartland,* 404 F.Supp.2d at 1149, 1149–50. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. *See id.* If the claimants are not

---

**4.** ADEA cases concerning class action certification are relevant to the instant case to the extent that class actions under the ADEA are authorized by 29 U.S.C. § 626(b), which expressly borrows the opt-in class action mechanism of the FLSA.

similarly situated, the district court decertifies the class and the opt-in plaintiffs are dismissed without prejudice. *See id.* The class representatives-i.e. the original plaintiffs-proceed to trial ·on their individual claims. *See id.*

■ Both *Carlson* and *Heartland* instruct that determination of whether or not named plaintiffs and opt-in plaintiffs claiming misclassication under the FLSA are similarly situated requires consideration of three factors: (1) the extent and consequences of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *See Carlson,* 2006 WL 2830015 at *3; *Heartland,* 404 F.Supp.2d at 1150 (both citing *Thiessen,* 267 F.3d at 1103). Plaintiffs bear the burden of establishing that they are similarly situated. *See Heartland,* 404 F.Supp.2d at 1149 (*citing Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir.1996) (ADEA claim)). However, plaintiffs' burden is not so rigorous that they must demonstrate their positions are identical to those of the opt-in plaintiffs. *Id.* Rather, plaintiffs "need show only that their positions are similar." *Id.* The decision to certify or decertify a collective action under section 216(b) is within the district court's discretion. *Id.; see also Carlson,* 2006 WL 2830015 at *3 (citing *Thiessen,* 267 F.3d at 1102; *Mooney v. Aramco Servs., Inc.,* 54 F.3d 1207, 1213–14 (5th Cir.1995)).

### 1. Disparate Factual and Employment Settings

■ In reviewing the voluminous factual evidence presented by the parties in support of their positions regarding whether or not decertification is appropriate, the Court finds three distinct categories of common and generalized evidence especially persuasive and supportive of plaintiffs' claims that their factual and employment settings are substantially similar. First, plaintiffs present specific factual evidence showing the named and opt-in plaintiffs as Caribou store managers had or have substantially the same job duties and responsibilities. Second, plaintiffs present specific factual evidence showing the named and opt-in plaintiffs consistently worked more than forty hours each week, making each of them potentially eligible for overtime pay under the FLSA in the event it is determined the store managers' "exempt" classification is improper. Third, plaintiffs have presented specific evidence showing they have all been impacted by Caribou's own internal policy and practice of considering its store managers similarly situated for the purposes of determining and reviewing the exempt classification it uniformly applies to all of its store managers.

#### a. Substantially Similar Job Duties

Caribou store managers' job duties and responsibilities are defined in a two-page job description. (*See* Doc. No. 409). According to the job description, store managers have five "Primary Areas of Accountability" ("Areas"). *See id.* These five Areas are identified as "Sales," "Profit," "People," "Administration," and "Ability to Perform All Roles, Duties and Responsibilities of Team Members and Shift Supervisor." *Id.* Included under the Sales, Profit, People, and Administration Areas are numerous bullet points further describing the nature of required duties and responsibilities. No further details are provided, however, under the Area designated as "Ability to Perform All Roles, Duties and Responsibilities of Team Members and Shift Supervisor." *Id.*

Defendant contends the job description demonstrates on its face that Caribou store managers' primary duties are mana-

gerial in character, and that plaintiffs' claims of misclassification are, from this evidence alone, without merit. Plaintiffs state their intention to disavow the job description due to an alleged lack of accuracy in its description of the actual duties store managers are required to perform, especially non-managerial duties. The Court disagrees with both of these characterizations to the extent they relate to its similarly situated analysis, and declines to address these positions to the extent they address the merits of plaintiffs' misclassification claims. *See Heartland,* 404 F.Supp.2d at 1150 (limiting consideration on motion for decertification to whether plaintiffs are similarly situated and setting aside issue of whether plaintiffs are properly classified as exempt).

The Court finds that a plain reading of Caribou's store manager job description indicates that it comprehensively describes the job duties of Caribou store managers, both managerial and non-managerial. Under Area five, store managers are expected to perform "*All* Roles, Duties and Responsibilities of Team Members and Shift Supervisor." (Emphasis added). The absence of further specificity under the fifth Area of store manager duties and responsibilities does not alter the comprehensiveness of the job description. What is clear to the Court is that this Area identifies the full scope of non-managerial duties all Caribou store managers are required to perform, and that these duties encompass the entire universe of non-managerial duties performed by Caribou store employees who are not store managers. On its face, then, the store manager job description provides a complete description of all Caribou store managers' job duties, and it identifies those duties as a mixture of both managerial and non-managerial responsibilities. The job description is competent generalized evidence of the uniform scope of duties and responsibilities of all Caribou

store managers, and a factual demonstration that every Caribou store manager, including the named and opt-in plaintiffs in this FLSA action, were expected to perform these duties.

The Court is compelled to note here that the inclusion of many managerial and many non-managerial job duties on Caribou's store manager job description factually distinguishes this case from the *Heartland* case, upon which defendant heavily relies. In *Heartland,* the Court ordered the decertification of a conditional collective action brought by Jiffy Lube store managers asserting claims for uncompensated overtime and alleging their jobs were primarily non-managerial in nature. *Heartland,* 404 F.Supp.2d 1144. The plaintiffs argued they were all regularly required to perform non-managerial duties, such as changing oil, checking fluids, vacuuming, washing windows, and interacting with customers. However, the Court, as part of its examination of the plaintiffs' disparate factual and employment settings, determined Jiffy Lube's store manager job description "sets out mainly managerial tasks." *Id.* at 1151. The plaintiffs in *Heartland* argued that their actual daily duties were not those duties identified in the company job description, but were instead predominantly non-managerial duties similar to those of non-exempt Jiffy Lube employees. Consequently, the Court determined that plaintiffs could not rely on the job description itself to demonstrate the scope and similarity of their *daily* activities, and that instead, a fact-intensive inquiry into the *daily* activities of each individual plaintiff was necessary in order for the Court to adequately identify the actual scope of plaintiffs' job duties before it could compare plaintiffs' job duties to determine the extent and consequences of any disparities among them. The Court found the highly

individualized nature of such an inquiry, and the variations found to exist between the actual duties performed by the individual store managers, weighed against collective adjudication of the plaintiffs' claims. *See id.* at 1154.

These are not the facts of the instant case. Although the plaintiffs have suggested Caribou's job description is inadequate to completely describe the non-managerial duties Caribou store managers perform, the Court concludes, for the reasons discussed above, that the Caribou store manager job description fully describes the scope of duties performed by store managers, and reveals on its face that these duties include a full blend of managerial and non-managerial tasks. Consequently, the necessity of an inquiry into the individual *daily* job duties of each individual plaintiff to identify the actual scope of his or her job duties is not present in the instant case. The absence of a wide variation among the plaintiffs in job title and job duties also distinguishes the instant case from the *Carlson* case.[5] In *Carlson*, employees of a transportation logistics company working at six different branch locations and working in four different job classifications sought to collectively assert claims against their employer on the grounds that they had been misclassified under the administrative exemption of the FLSA. *Carlson*, 2006 WL 2830015 at * 1. In granting the defendant's

motion for decertification of the conditionally certified collective action, the *Carlson* Court concluded that the plaintiffs had "substantial variations" in the duties performed both within and across the different job categories. *Id.* at *10. The Court concluded, therefore, the plaintiffs were not sufficiently similarly situated to warrant collective adjudication of their misclassification claims. *See id.* In the instant case, the evidence before the Court does not reveal the substantial variations in job titles and job duties among the plaintiffs. *Carlson* is, therefore, factually distinguishable.

■ The parties have devoted substantial energy to arguments regarding whether plaintiffs' primary duties as store managers are in fact managerial or non-managerial in nature.[6] The Court notes that the FLSA does not require complete abstention from non-exempt duties in order for the exempt classification to be proper. *See Heartland,* 404 F.Supp.2d at 1151 (citing *Murray v. Stuckey's, Inc.,* 939 F.2d 614, 618 (8th Cir.1991)). Moreover, the store manager job description alone is not dispositive of the exemption question. *See id.* That said, the determination of whether it is the managerial duties or the non-managerial duties that are the predominant or "primary duties" of Caribou store managers is a question that goes to

---

**5.** This uniformity of job title and scope of job duties also distinguishes the instant case from almost all of the numerous cases cited by Caribou in a lengthy string-cite of FLSA collective action decertification cases. (*See* Doc. No. 402 at 8–10 n. 5). In a vast majority of these other cases, the named and opt-in plaintiffs did not hold identical job titles and the job duties and responsibilities performed by the putative plaintiffs varied widely.

**6.** Under the applicable regulations, an employee may be exempt as an executive if she spends more than 50% of her time performing

executive tasks or, if less than 50% of the time is spent on executive tasks, these tasks nevertheless predominate or define the job. 29 C.F.R. § 541.700. The regulations provide guidance on determining exemption status when less than 50% of the employee's time was spent on executive tasks, as the plaintiffs claim here, in order to determine if executive tasks predominate or define the job. The inquiry includes examination of the employee's salary, "primary duties" and supervisory duties and amount of discretion. 29 C.F.R. § 541.100(a)(1), (4).

the merits of plaintiffs' misclassification claims, which is not before the Court at this stage of the collective action process. *See id.* (On a pending motion for decertification, the Court does not consider whether the named plaintiffs and opt-in plaintiffs would properly be classified as exempt employees.).

Instead, the Court's primary inquiry at this stage is focused on whether or not the named plaintiffs and the opt-in plaintiffs are sufficiently similarly situated to allow them to proceed with their claims collectively. In examining the extent and consequences of disparate factual and employment settings of the individual plaintiffs, the Court finds the two-page store manager job description that is uniformly applied to all Caribou store managers is evidence of a lack of significant variation in job duties and responsibilities among the named and opt-in plaintiffs in this case. The store manager job description presents specific factual evidence that is common to all of the plaintiffs in this action, and is, therefore, proper generalized evidence suitable for a jury to consider in collectively examining the plaintiffs' misclassification claims.

The deposition testimony of James Batocletti also provides common factual evidence supporting a finding of similar employment circumstances among the plaintiffs. Mr. Batocletti is a former Caribou director of operations and district manager. He testified that

> Caribou stores were uniform or similar in virtually every respect. Specifically, the stores sold the same lines of products, the stores' employees had exactly the same job titles and duties, the stores reported the same financial information on the same form, the employees wore the same uniforms, the stores were subject to the same policies and practices on a company-wide basis and the stores

> required the same supplies. A store manager at one store could move to the same position at another store with no additional training.

(*See* Doc 480, Ex. 11, Affidavit of James Batocletti).

■ Although Caribou challenges the motives behind, and the veracity of, Mr. Batocletti's testimony in this case, defendant's self-serving assertions do not dissuade the Court from considering testimony from an individual who was in a reasonable position to have personal knowledge of Caribou store managers as an employee group and personal knowledge of Caribou's policies and practices regarding its store managers, along with the implementation thereof. The relevance of Mr. Batocletti's testimony to each plaintiff's misclassification claims is common across all of the plaintiffs. Defendant will have the opportunity to refute Mr. Batocletti's testimony through cross examination and presentation of their own evidence at a collective trial on the merits of plaintiffs' claims.

### b. Over Forty Hours Worked Each Week

When the Court conditionally certified this collective action in October of 2005, the parties were granted permission to obtain limited discovery from eighty-five of the opt-in plaintiffs selected at random. Questionnaires were provided to the eighty-five opt-in plaintiffs and a few depositions were permitted. The named plaintiffs also provided discovery. In response to a question seeking the approximate number of hours the store managers worked on average each week, the opt-in plaintiffs uniformly indicated work weeks in excess of forty hours. (*See* Doc. 412, Questionnaire Summary). The vast majority of opt-in plaintiffs stated their work week hours exceeded fifty hours per work

week, and more than ten of the eighty-five randomly selected opt-in plaintiffs indicated they worked over seventy hours. (*See id.*). Each of the named plaintiffs indicated in his declaration that his work week typically consisted of approximately sixty hours. (*See* Doc. 408, Declarations). This factual evidence demonstrates a commonality of circumstances among all of the plaintiffs regarding their qualification for overtime compensation and the denial of that compensation under the executive exemption classification assigned by Caribou that plaintiffs now challenge.

The accuracy and the commonality of the assertions of the named and opt-in plaintiffs regarding their working in excess of forty hours each week are bolstered by Caribou's own admissions and internal corporate documents. First, Caribou admits that it classifies all of its store managers under the executive exemption of the FLSA and does not, therefore, compensate its store managers for hours worked in excess of forty in any one week. (*See* Answer at ¶ 18)[7] ("Defendant admits that it classifies its store managers as exempt employees under the FLSA."). Karen McBride–Raffel, Caribou's Vice President of Human Resources and Rule 30(b)(6) designee, also testified that all Caribou store managers are uniformly classified as exempt from entitlement to overtime compensation under the executive exemption of the FLSA. (*See* Doc. 445, McBride–Raffel Deposition Transcript at 165). McBride–Raffel further testified that Caribou's corporate time and attendance records indicate store managers work an average of forty-six hours each week. (*See id.* at 135). Documents bearing the Caribou logo and purported by plaintiffs to be

Caribou corporate documents indicate "Store Managers are required to work 50–55 hours/week." (*See* Doc. No. 481, Ex. 13 at 17). The Court finds plaintiffs have presented common evidence of possible eligibility for overtime compensation under the FLSA due to their weekly work hours in excess of forty, and have demonstrated their common deprivation of overtime compensation due to the uniform application of the executive exemption by Caribou. This evidence supports a finding of sufficient commonality between and among the plaintiffs to support collective adjudication of their misclassification claims.

### c. Caribou's Internal Practices for Determining Classification

The third category of evidence presented by plaintiffs in support of their assertions that they are similarly situated for the purposes of proceeding collectively under section 216(b) of the FLSA is evidence of Caribou's own established internal practices for considering the applicability of the executive exemption to its store managers. The Court finds plaintiffs' evidence demonstrates Caribou's own internal use of a generalized approach to the gathering and consideration of evidence regarding store managers' duties and responsibilities for the determination of the appropriateness of the exempt classification. The Court finds this evidence highly persuasive and has given it significant weight in its determination of whether or not the named plaintiffs and opt-in plaintiffs are similarly situated.

Specifically, McBride–Raffel testified that on at least three separate occasions between 2000 and 2005, Caribou undertook

---

**7.** The Court notes its failure to find an entry on the docket for Caribou's Answer to plaintiffs' complaint. Defendant removed this case, but the removal papers do not include a copy of Caribou's Answer. In light of plain-

tiffs' direct citation to Caribou's Answer in their opposition memorandum (See Doc. No. 496 at 13), a copy of the document referred to by plaintiffs was requested and received by the Court.

examinations of the appropriateness of its exemption classification for store managers. (*See* Doc. No. 444 at 41–42). Noteworthy is McBride–Raffel testimony that one of these reviews was prompted by litigation against Starbucks in which Starbucks store managers sought to challenge their exemption status under the FLSA. (*See id.* at 53–54, 57).

McBride–Raffel testified that she personally participated in each of these reviews, and that during each review she consulted Caribou's written store manager job description, sought the advice of Caribou's legal counsel, and contacted store managers by telephone. (*See id.* at 47–56). However, when queried further, McBride–Raffel could not recall the number of store managers contacted or identify any contacted store manager by name. (*See id.* at 49). In fact, McBride–Raffel testified that she could not recall if the 2002 review even included making contact with store managers or any other kind of field analysis. (*See id.* at 54–55). Her testimony was that "at a minimum, we would have looked at the store manager job description." (*See id.* at 54).

In response to direct questioning regarding Caribou's process of reviewing the exemption classification of store managers, McBride–Raffel did not describe efforts by Caribou to examine the factual circumstances of *each* store manager's individual store setting in deciding whether that store manager would be classified as exempt under the FLSA. Indeed, when asked directly, McBride–Raffel stated that to her recollection Caribou "has never undertaken a store manager survey that would include all store managers." (*See* Doc. No. 445 at 103).

Instead, McBride–Raffel testified that in Caribou's three separate reviews of the exemption status of its store managers, the possibility of some of the store managers being treated as exempt and other managers being treated as non-exempt was not considered. (*See id.* at 170). In addition, these reviews did not include the consideration of any differences in store size, any differences in the number of employees in stores, any differences in the sales of stores, or any differences in the location of stores. (*See id.* at 170–71).

The Court finds plaintiffs' proffer of evidence goes beyond a general showing that Caribou had a company policy of classifying all store managers under the executive exemption. The evidence of misclassification goes deeper in this case and reveals that the mechanism behind Caribou's application of a uniform exemption classification is based upon Caribou's own generalized assumption that all store managers could be considered as similarly situated for the purposes of considering whether or not they should be classified as exempt. Caribou's policies and practices regarding consideration of the applicability of the exemption to store managers did not encompass or require an individualized inquiry into the factual circumstances of each store manager in order to determine whether that particular store manager was exempt. McBride–Raffel's testimony demonstrates Caribou's belief that the factual and employment settings of each of its store managers are sufficiently similar to those of all other store managers to permit generalized consideration of their duties and responsibilities in deciding whether or not all store managers meet the requirements under the FLSA for asserting the executive exemption.

From this evidence, the Court finds that Caribou has an internal company policy and practice of viewing its store managers as similarly situated for the purposes of making the FLSA exemption determination, and that this policy is applied uniformly to all Caribou store managers.

The Court notes here that this clear evidence of Caribou's uniform policy and practice significantly lessens any concerns about variations in plaintiffs' employment circumstances. *See Wilks v. Pep Boys,* No. 3:02–0837, 2006 WL 2821700 at *3 (M.D.Tenn. September 26, 2006) (holding that demonstration of a single policy or plan may assuage concerns about plaintiffs' otherwise varied circumstances)(internal quotations and citations omitted).

In sum, Caribou's internal company policy is to utilize an "all or nothing" approach to the exemption analysis regarding its store managers, and the Court finds common notions of equity and fairness strongly counsel a determination by this Court that plaintiffs are similarly situated for purposes of collectively pursing their legal claims challenging the propriety of Caribou's application of the executive exemption to any specific store manager. The Court finds it disingenuous for Caribou, on one hand, to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming the plaintiffs cannot proceed collectively to challenge the exemption. Caribou's objections are wholly inconsistent with its own internal policies and practices. *Cf. Wang v. Chinese Daily News, Inc.,* 231 F.R.D. 602, 613 (C.D.Cal. 2005) (in a case involving California labor laws, determining that "Defendant cannot, on the one hand, argue that all reporters and account executives are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each reporter and account executive in order to determine whether that individual is 'Exempt.' ").

Moreover, the Court notes that Caribou's established practices of reviewing the store manager exemption classification through it own internal examination of only generalized evidence distinguishes this case from both *Heartland* and *Carlson.* First, there is simply no indication in the *Heartland* opinion that the Court was presented with evidence of a Jiffy Lube corporate policy of uniform classification of its store managers as exempt based upon generalized evidence of the job duties and responsibilities of all of its store managers.

Second, in *Carlson,* the evidence presented to the Court demonstrated that defendant C.H. Robinson's policies and practices included individual employee reviews. Contrary to the instant case, CH Robinson's policy included annual compensation reviews, including meetings with individual employees to review and amend each employee's compensation package, and discussions between branch managers and a CH Robinson compensation manager regarding each employee's compensation package during which "at least five minutes [were] spent discussing each employee." *Carlson,* 2006 WL 2830015 at * 1. After these individualized inquiries, the branch manager determined whether an employee was paid on a salaried or hourly basis, and whether the employees were classified as exempt under the FLSA. *Id.* Accordingly, the *Heartland* and *Carlson* matters are factually distinguishable from this case.

### 2. Individualized Defenses

■ The Court next considers whether potential defenses would make a proposed collective action unmanageable in this instance. This determination is within the discretion of the trial court. *See Moss v. Crawford & Co.,* 201 F.R.D. 398, 409 (W.D.Pa.2000). Caribou contends the collective treatment of plaintiffs' claims is "impractical, if not impossible" because of the numerous individualized defenses Caribou will raise to certain opt-in plaintiffs' claims. (*See* Doc. No. 402 at 39).

Upon consideration of the individualized defenses Caribou purports it will assert, the Court concludes the defenses chiefly relate to issues of damages; namely, how much uncompensated overtime is actually due to each individual plaintiff if the exemption is found to be improper. These damages issues do not preclude the collective adjudication of the exemption issue at the center of this action as discussed above. There exists in this case sufficient generalized and representative evidence regarding Caribou store managers' factual and employment setting for a jury to decide this central issue. Caribou will have an opportunity to adequately present its evidence challenging the credibility of the evidence plaintiffs present to the jury in a collective adjudication setting.

To promote the manageability of the collective action, the undersigned recommends a bifurcation of the case into a liability stage, where the parties first address the propriety of Caribou's blanket application of the executive exemption to its store managers, followed by a damages phase, if necessary, where the parties consider the impact of a misclassification on individual plaintiffs. *See Thiessen,* 267 F.3d at 1107 (ADEA claim) (reversing a district court's decision to decertify in a collective action where bifurcation of the case into a liability phase and a damages phase was possible); *Wilks v. Pep Boys,* No. 3:02–0837, 2006 WL 2821700, at *7 (M.D.Tenn. Sept.26, 2006).

### 3. Fairness and Procedural Considerations

■ Defendant's moving brief fails to address this third factor in the similarly situated analysis. Nonetheless, the Court makes the following findings. Federal courts observe that the FLSA is designed to be a remedial statute, and that it "should be given a broad reading, in favor of coverage." *Kelley v. Alamo,* 964 F.2d 747, 749–50 (8th Cir.1992); *Fegley v. Higgins,* 19 F.3d 1126, 1132 (6th Cir.1994) (FLSA is "a broadly remedial and humanitarian statute" and that courts "construe employee wage protection liberally"). To that end, the Court must determine whether collective treatment of this action comports with the purposes of the FLSA by balancing the benefits of a reduction in the cost to individual plaintiffs, and any increased judicial utility that may result from the resolution of many claims in one proceeding, with the cost of any potential detriment to the defendant and the potential for judicial inefficiency that could stem from collective treatment. *See Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) (ADEA claim).

The purposes of a collective action is to "allow[ ] ... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Id.* For many plaintiffs, a collective action is the only practical method of adjudicating their FLSA claims. Each plaintiff in this case contends Caribou improperly classified him or her under the executive exemption of the FLSA, and that a denial of overtime compensation resulted. The evidence presented by plaintiffs indicates Caribou made its decision concerning the exemption status of its store managers on the basis of generalized evidence of store managers' job duties and responsibilities. Plaintiffs have sufficiently demonstrated the existence of common proof from which a jury could properly consider the misclassification claims plaintiffs raise, and have demonstrated the effectiveness and sufficiency of the utilization of representative evidence in undertaking that collective examination.

Moreover, the effect of a court order directing the decertification of the condi-

tional class in this case would be a dismissal all of the opt-in plaintiffs without prejudice, placing each opt-in plaintiff back at square one, without the benefit of pooled resources, and presenting the Court with almost three hundred separate lawsuits to resolve the same question of whether Caribou's exemption classification of all of its store managers was proper. This result contravenes the policy behind collective actions under section 216(b) of the FLSA of allowing plaintiffs to vindicate their rights with lower individual costs by pooling resources and benefitting the judicial system through "efficient resolution in one proceeding of common issues of fact and law arising from the same alleged ... activity." *Id.* The Court concludes that a requirement that each plaintiff prove his or her claim of misclassification individually would waste more judicial time and resources than trying plaintiffs' cases individually would preserve. *See Wilks,* 2006 WL 2821700 at *8.

Finally, although Caribou contends it has the right to defend against individualized claims on an individual basis, rather than collectively, (*see* Doc. No. 402, Defendant's Memorandum in Support at 38), this right must be balanced with the rights of the plaintiffs-many of whom would likely be unable to bear the costs of an individual trial-to have their day in court. *See Glass v. IDS Fin. Servs., Inc.,* 778 F.Supp. 1029, 1081–82 (D.Minn.1991) (ADEA claim) (finding that although the defendant complained that collective treatment would infringe upon its due process rights, such treatment was necessary in order to pro-

tect the rights of the plaintiffs, who were "less able to bear the cost of separate trials because they ha[d] fewer resources than [the defendant]"). Here, the Court finds the individual plaintiffs are less able to bear the cost of separate trials because they have fewer resources than Caribou; a collective action will give plaintiffs a fair and full opportunity to adjudicate their claims. *See id.* at 1081.

For all these reasons, the undersigned concludes the named plaintiffs and the opt-in plaintiffs are similarly situated for the purposes of collectively adjudicating their misclassification claims. Thus, the Court respectfully recommends Caribou's motion seeking decertification of the conditional collective action in this action be denied.[8]

### B. Plaintiffs' Motion to Certify Minnesota State Class

Plaintiffs asks this Court to certify their Minnesota Fair Labor Standards Act, Minn.Stat. § 177.21, *et seq.,* claims as an opt-out class under Rule 23 of the Federal Rules of Civil Procedure. The Complaint defines the proposed class as "all persons employed as 'Store Managers' in stores located in Minnesota at any time on or after May 25, 2003."[9] (*See* Doc. No. 1, Ex. A, Complaint at ¶¶ 2, 5).

 The Court may certify the class only when it is satisfied "after rigorous analysis" that all of prerequisites of Rule 23 are met. *Jenson v. Eveleth Taconite Co.,* 139 F.R.D. 657, 659 (D.Minn. 1991). Plaintiffs bear the burden of establishing an action satisfies the requirements

---

8. Much ado was made over the Court's consideration of an expert report submitted by plaintiffs' expert David Lewin. This report was the subject of a Motion to Strike by defendants that the undersigned directed to the presiding district judge for consideration as a motion *in limine.* The Court found it unnecessary to consider the report of Mr. Lewin submitted by plaintiffs in reaching conclusions and recommendations set forth herein, and simply makes note of this fact for the record.

9. Plaintiffs' desire to expand the class definition to include May 2002 through the present is discussed below. *See infra.* at III.B.2.d.

for class certification, including all requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). For purposes of the Rule 23 analysis, the substantive allegations in plaintiffs' complaint must be accepted as true. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (stating that courts should not conduct a preliminary inquiry into the merits of a suit in determining whether it may be maintained as a class action); *Lockwood Motors, Inc. v. General Motors Corp.,* 162 F.R.D. 569, 573 (D.Minn.1995). The strength of the plaintiffs' claims should not affect the certification decision, but the court "certainly may look past the pleadings to determine whether the requirements of [R]ule 23 have been met." *Thompson v. Am. Tobacco Co., Inc.,* 189 F.R.D. 544, 549 (D.Minn. 1999) (quoting *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 744 (5th Cir.1996)). The district courts ultimately retain wide discretion in determining whether or not to certify a class under Rule 23. *See Coleman v. Watt,* 40· F.3d 255, 259 (8th Cir. 1994).

### 1. Supplemental Jurisdiction

■ Caribou first challenges this Court's supplemental jurisdiction. Defendant's contentions are without merit. This Court has federal question jurisdiction over the named and opt-in plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the named and opt-in plaintiffs' state overtime claims pursuant to 28 U.S.C. § 1367, because the state law overtime claims and the FLSA claims arise out of the same common nucleus of operative facts under the circumstances of this case. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *De Asencio v. Tyson Foods, Inc.,* 342 F.3d

301, 308 (3rd Cir.2003) (holding that where "the same acts violate parallel federal and state laws, the common nucleus of operative facts is obvious and federal courts routinely exercise supplemental jurisdiction over the state law claims").

■ Caribou argues that the Eighth Circuit decision in *Fielder v. Credit Acceptance Corp.* disallows supplemental jurisdiction over members of the proposed state class that have not opted into the FLSA action under section 1367(a). 188 F.3d 1031 (8th Cir.1999). That decision involved an action under the Truth in Lending Act. The plaintiffs joined state law claims that were conditionally certified as class actions, even though many of the class members were not participating in the federal claim. *Id.* at 1033–34. The court held that there was no supplemental jurisdiction over the state claims, reasoning that "the individual members of a permissive class are distinct cases and controversies; each must separately support federal jurisdiction." *Id.* at 1037.

This holding in *Fielder* was implicitly overruled in *Exxon Mobil Corp. v. Allapattah Services Inc.* 545 U.S. 546, 560–61, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005), where the Supreme Court, after examining section 1367(a), determined that once a court has original jurisdiction over a case or controversy, supplemental jurisdiction will reach all related claims. By rejecting the notion of indivisible jurisdiction, the Court emphasized that newly joined parties need not establish an independent basis for federal jurisdiction. *See id.* Furthermore, the holding in *Fielder,* and by extension the arguments of Caribou, are accurately reflected by Justice Ginsberg's dissenting opinion in *Exxon Mobil. See id.* at 590–91, 125 S.Ct. 2611 (Ginsburg, J., dissenting).

Moreover, numerous courts have concluded that supplemental jurisdiction reaches to pendent state law overtime claims of absent class members who did not join the FLSA collective action. *See e.g., Lindsay v. Government Employees Insurance Co.,* 448 F.3d 416, 423 (D.C.Cir. 2006) (holding that even though it was not possible to demonstrate an independent basis for subject matter jurisdiction over the new class members, the state wage law claims arose out of the same case or controversy and supplemental jurisdiction attached under § 1367(a)); *De Asencio,* 342 F.3d at 308 (3d Cir.2003) (concluding that where there is original jurisdiction over an action under the FLSA, supplemental jurisdiction will reach state wage law claims); *Trezvant v. Fidelity Employer Servs. Corp.,* 434 F.Supp.2d 40, 56–57 (D.Mass.2006); *Bartleson v. Winnebago, Industries, Inc.,* 219 F.R.D. 629, 634–35 (N.D.Iowa 2003). Accordingly, the Court concludes its supplemental jurisdiction in this case reaches to pendent state law overtime claims of absent class members who did not join the FLSA collective action.

■ Defendant next argues that, regardless of the scope of the putative class, the Court should decline supplemental jurisdiction over plaintiffs' alleged state law claims as a matter of discretion. This analysis is governed by 28 U.S.C. § 1367(c), which provides that the district courts may decline to exercise jurisdiction over a claim under section 1367(a) if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. Caribou

generally cites the second and fourth subsections of section 1367(a).

When considering whether state law claims substantially predominate, the usual question is whether the state claims differ from the federal claims. *De Asencio,* 342 F.3d at 308. In examining this question, the *De Asencio* court not only considered the differences between the state and federal claims, but also the difference between the number of state class members and federal plaintiffs. Finding that there were many more state class members than federal plaintiffs—nearly 4100 state class members, compared to about 450 plaintiffs proceeding under the FLSA—the *De Asencio* court determined the federal litigation would be dominated by state law issues. *Id.* at 311. Thus, the court concluded that the state claim would substantially predominate over the federal claim, and reversed the district court, holding that the exercise of supplemental jurisdiction was an abuse of discretion. *Id.*

Subsequent authorities have also focused on the proportion of state class members to federal plaintiffs under the FLSA. Where the number of state class members is less than, or comparable to, the number of federal plaintiffs, courts will generally exercise supplemental jurisdiction. *See, e.g., Lindsay v. Government Employees Ins. Co.,* 448 F.3d 416, 424–25 & nn. 11, 12 (D.C.Cir.2006); *Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474, 485 (E.D.Cal.2006); *Trezvant v. Fidelity Employer Servs. Corp.,* 434 F.Supp.2d 40, 57 (D.Mass.2006). Where the number of state class members is substantially greater than the number of federal plaintiffs, courts have exercised discretion and declined supplemental jurisdiction. *See, e.g., De Luna–Guerrero v. North Carolina Growers Ass'n, Inc.,* 338 F.Supp.2d 649, 652 (E.D.N.C.2004); *Leuthold v. Destina-*

*tion America, Inc.,* 224 F.R.D. 462, 470 (N.D.Cal.2004).

Under the fourth factor in section 1367(c), whether there are "exceptional circumstances" that justify declining to exercise supplemental jurisdiction, district courts are primarily concerned that, by joining class actions for state claims, the plaintiffs are improperly seeking to bolster participation in the federal FLSA action. *Leuthold v. Destination America, Inc.,* 224 F.R.D. 462, 470 (N.D.Cal.2004) (quoting *Rodriguez v. The Texan, Inc.,* 2001 WL 1829490 at *2 (N.D.Ill. Mar.7, 2001)). A similar concern is the difficulty in case management as a result of conflicts between the opt-in procedure of the FLSA and the opt-out procedure under Rule 23. Some courts have observed that this conflict, by itself, does not supply a reasonable basis to decline supplemental jurisdiction. *See Lindsay,* 448 F.3d at 424–25; *see also Beltran–Benitez v. Sea Safari, Ltd.,* 180 F.Supp.2d 772, 774 (E.D.N.C.2001) (concluding that, due to comparable number of state class and federal plaintiffs, it was possible to carry out both procedures concurrently). But where a greater number of state classes or state class members are involved, difficulties in case administration may support the decision to decline supplemental jurisdiction. *See Zelaya v. J.M. Macias, Inc.,* 999 F.Supp. 778, 783 (E.D.N.C.1998).

In the instant case, the MFLSA claims are substantially parallel to the FLSA claims. This case is also similar to those cases where the number of state class members is less than, or comparable to, the number of federal plaintiffs. Approximately 300 consent forms have been received from opt-in plaintiffs in the FLSA action. Plaintiffs have estimated the Minnesota state class size to be between 150 and 400. As discussed below, the

Court finds this estimate to be reasonable under the circumstances of this case.[10] Thus, this is not a case in which the state law claims will dominate the litigation, nor is it a case where the opt-in process and the opt-out process present management difficulties for the Court. Indeed, the FLSA opt-in period has concluded. Accordingly, the court finds the exercise of supplemental jurisdiction over plaintiffs' state law claims is appropriate in this instance.

### 2. Federal Rule of Civil Procedure 23(a)

Under Rule 23(a), the party seeking class certification must demonstrate: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Defendant's arguments in opposition to each of these Rule 23(a) certification requirements repeatedly assert that class certification in this case is improper because it will be necessary to examine each plaintiff's primary duties in order to resolve plaintiffs' claims, and generalized proof is therefore improper for demonstrating whether or not each individual store manager is exempt from overtime compensation under the MFLSA. The Court will address this reoccurring argument only once, and the Court's conclusions are expressly applied to defendant's arguments raised in opposition to each Rule 23(a) certification factor.

The Court's previous conclusion that the store managers are "similarly situated" for

---

**10.** *See infra* at III.B.2.a.

purposes of proceeding collectively under the FLSA is relevant here. The exemption misclassification claims alleged by the Minnesota state class members are essentially parallel to the misclassification claims of the federal plaintiffs. The central issue under both claims examines the primary duties and responsibilities of Caribou store managers in an effort to determine whether or not the executive exemption applies to the store managers as a group.[11]

■ For the same reasons stated by the Court in finding the FLSA plaintiffs are similarly situated, the Court finds defendant's contention that the claims in this case require individualized fact-intensive inquiries into each store manager's daily activities is wholly inconsistent with its own established internal policies and practices. The evidence before the Court demonstrates that Caribou's own practice is to consider generalized information about the duties and responsibilities of all store managers in determining whether or not all store managers are exempt from overtime compensation under the applicable federal and state labor laws. Thus, in the context of plaintiffs' request for certification of a Minnesota state class, the Court once again rejects Caribou's attempts to now disavow the sufficiency of this generalized evidence in determining whether or not all store managers are properly classified as exempt from overtime compensation. The same categories of generalized evidence regarding job duties, supervisory responsibilities, and work week hours that frame the FLSA misclassification inquiry will also frame the misclassification inquiry under the state law claims.

With the establishment of the Court's rejection of defendant's primary argument

in opposition to Rule 23 certification, the Court turns to the specific requirements under Rule 23(a), addressing the parties arguments that remain.

### a. Numerosity

■ To satisfy the numerosity requirement, the number of potential members of the class must be so numerous that joinder of all members is impracticable. Fed. R.Civ.P. 23(a)(1). Courts have typically established no arbitrary or rigid rules regarding the required size of a class, and what constitutes impracticality depends upon the facts of each case. *See In re Select Comfort Corp. Securities Litigation,* 202 F.R.D. 598, 603 (D.Minn.2001); *Parkhill v. Minnesota Mut. Life Ins. Co.,* 188 F.R.D. 332, 337 (D.Minn.1999). Plaintiffs need not prove the exact number of proposed class members to satisfy the numerosity requirement as long as they can reasonably estimate the size of the class. *See Garfinkel v. Memory Metals, Inc.,* 695 F.Supp. 1397, 1401 (D.Conn.1988).

■ Plaintiffs assert the precise number of class members is currently unknown. However, plaintiffs state the class size can be estimated at between 150 and 400 members. The Court finds this is an accurate estimation of the class size given the fact that Caribou has identified approximately 150 stores in existence in Minnesota, and plaintiffs' report that approximately 380 of the store managers identified by Caribou for the purposes of sending opt-in notices in the FLSA action have Minnesota addresses. (*See* Doc. No. 479. Pl. Mem. in Supp. at 5).

■ Defendant argues the plaintiffs have not met the Rule 23(a) numerosity requirements because they cannot demon-

---

**11.** Just as the federal regulations guide the FLSA exemption inquiry through an examination of primary duties, *see supra* at note 6;

Minnesota Rule 5200.0180 similarly directs the MFLSA exemption inquiry through a primary duties analysis.

strate that joinder of all plaintiffs seeking to assert overtime claims is impracticable. Defendant contends the joinder of all state class plaintiffs has already occurred through the opt-in process of the FLSA collective action. The Court disagrees. As discussed above, the Court's supplemental jurisdiction over the asserted state law claims is not limited to only those Minnesota store managers who have opted into the federal FLSA claims. Thus, joinder of all possible state class plaintiffs has not necessarily occurred through the FLSA collective action. The Court disagrees with Caribou's assumption that all of the store managers in Minnesota who desire to join this lawsuit have done so by opting into the FLSA action. There exists the possibility that some current store managers did not opt into the FLSA action for fear of retaliation, and a state class certification with its opt-out procedures could provide an avenue for additional store managers to assert their claims without the same level of apprehension that comes from taking affirmative steps to join into the lawsuit. *See e.g., Scott v. Aetna Servs., Inc.,* 210 F.R.D. 261, 267 (D.Conn. 2002). From the evidence before it, the Court concludes plaintiffs have shown that the class of individuals who may assert Minnesota state law claims against Caribou is potentially numerous enough to make joinder impracticable.

#### b. Commonality

■ Rule 23(a) requires Plaintiffs to show "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Common questions exist when there is a "common nucleus of operative facts." *Egge v. Healthspan Servs. Co.,* 208 F.R.D. 265, 269 (D.Minn.2002). All such questions need not be common to every member of the class. *See Paxton v. Union National Bank,* 688 F.2d 552, 561 (8th Cir.1982); *Lockwood Motors, Inc. v.*

*General Motors Corp.,* 162 F.R.D. 569, 575 (D.Minn.1995). The commonality requirement is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation, even though the individuals may not be identically situated. *See In re Select Comfort Corp. Securities Litigation,* 202 F.R.D. 598, 603 (D.Minn.2001) (citing *De-Boer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1174 (8th Cir.1995)). Factual variances among class grievances will not defeat the commonality requirement, so long as the claims arise from a common nucleus of operative facts. *See id.*

The exemption misclassification claims alleged by the Minnesota state class members essentially parallel in facts and legal theories to the misclassification claims of the federal plaintiffs; that is, a focus on the primary duties and responsibilities of Caribou store managers in an effort to determine whether or not the executive exemption applies to the store managers as a group. As discussed previously, the Court finds the same categories of common and generalized evidence regarding job duties, supervisory responsibilities, and work week hours that frame the FLSA misclassification inquiry will also frame the misclassification inquiry under the state law claims. Accordingly, the Court finds the Rule 23(a)(2) commonality requirements are satisfied.

#### c. Typicality

■ Next, Rule 23(a) requires Plaintiffs to establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The typicality prerequisite is satisfied "when the claims of the named plaintiffs arise from the same event or are based on the same legal theory as the claims of the class members." *Lockwood,* 162 F.R.D. at 575.

The typicality requirement is not an onerous one. *See Paxton,* 688 F.2d at 562. Typicality exists if there are "other members of the class who have the same or similar grievances as the plaintiff." *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir.1996) (citation omitted). A "strong similarity of legal theories" satisfies the typicality requirement even if substantial factual differences exist. *Lockwood,* 162 F.R.D. at 575.

Like the proposed class members, the representative plaintiffs in this action each worked as store managers at Caribou stores in Minnesota during the class period and typically worked hours that would qualify as overtime. In addition, the representative plaintiffs raise the same grievances as the members of the proposed class. They all challenge their exempt classification under the MFLSA, and seek the overtime compensation they have been denied. Under these circumstances, the Court finds the claims of the named plaintiffs and those of the proposed state class members arise from the same events, policies, and practices, and are based upon the same legal theories. Accordingly, the Court finds the typicality requirement is satisfied.

### d. Adequate Representation

■ Plaintiffs must also demonstrate that the named representatives will "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). To satisfy this requirement, Plaintiffs must demonstrate that (1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously, and (2) each representative's interests are sufficiently similar to those of the class such that it is unlikely that their goals and viewpoints will diverge. *See Lockwood,* 162 F.R.D. at 576.

The Court first finds the credentials of Plaintiffs' counsel indicate that they are fully competent and willing to pursue this action with zeal. (*See* Doc. 480, Nauen Aff. at, ¶ 6 & Ex. 5). While defendants have attacked the competency and motives of counsel on several different theories, the Court finds no basis upon which to provide further comment. However, the ability of each of the named plaintiffs to prosecute the action collective requires additional scrutiny and discussion by the Court.

■ Defendant claims a conflict exists between named plaintiff Williams–Goldberg and the class members because Williams–Goldberg's claims are barred by the two year statute of limitations under the MFLSA. Defendant correctly identifies the applicable statute of limitations under the MFLSA, which provides that actions for recovery of overtime shall be commenced within two years or, if nonpayment is willful, three years. *See* Minn. Stat. § 541.07(5). The parties do not dispute that this action was commenced on May 25, 2005. Plaintiffs have also not disputed Caribou's assertion that Williams–Goldberg ceased working as a store manager on November 4, 2002, more than two years before the commencement of this action on May 24, 2005.

Nonetheless, the statute of limitations is an affirmative defense, and Caribou's invocation of this defense raises issues that require inquiry into the merits of the case. Such an inquiry is improper at the class certification stage of these proceedings. *Eisen,* 417 U.S. at 178, 94 S.Ct. 2140 (courts should not conduct a preliminary inquiry into the merits of a suit in determining whether it may be maintained as a class action); *Lockwood,* 162 F.R.D. at 573. The Court concludes, therefore, that Caribou's allegations that Williams–Goldberg is subject to the statute of limitations cannot serve to bar a class certifica-

tion in this case due to the inquiry required to determine the merits of such contentions. *See Bentley v. Honeywell Intern., Inc.,* 223 F.R.D. 471, 485 (S.D.Ohio 2004) (citing *Cook v. Rockwell Intern. Corp.,* 151 F.R.D. 378, 386 (D.Colo.1993)).

██ More fundamental, however, is the basic requirement that the "named representative party is a member of the class he purports to represent." *See e.g., Kelley v. Galveston Autoplex,* 196 F.R.D. 471, 474 (S.D.Tex.2000) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1761). Williams–Goldberg fails to meet this requirement under the MFLSA class defined in the Complaint. In two separate paragraphs of the Complaint, Plaintiffs specifically and expressly defined the class period for the MFLSA claims as May 2003 through the present. (*See* Doc. No. 1, Ex. A at ¶¶ 2, 5). Williams–Goldberg stopped working as Caribou store manager in November 2002, which is six months before the beginning of the class period. On this basis alone, Williams–Goldberg is not suited to represent the interests of members of the MFLSA class in this matter.[12]

██ Yet, Williams–Goldberg's failure to meet the requirements of a class representative for the MFLSA class is not fatal to the certification of a class in this matter.

Federal Rule of Civil Procedure 23(a) provides that "one or more members of a class may sue or be sued as representative parties." Consequently, if the action is brought by more than one named representative plaintiff, it only is necessary that one of them be a qualified member of the class as long as the other prerequisites of Rule 23(a) are satisfied. *Great Rivers Coop. of Southeastern Iowa v. Farmland Indus. Inc.,* 120 F.3d 893, 899 (8th Cir. 1997); *Aiken v. Obledo,* 442 F.Supp. 628, 658 (D.C.Cal.1977) (citing 7 Wright and Miller, *Federal Practice and Procedure,* § 1761).

Defendant has raised little objection to the representation of the MFLSA class by the two remaining named plaintiffs, Nathan Nerland and James Geckler, and the Court finds no evidence in the record suggesting Nerland or Geckler are not members of the proposed MFLSA class, nor evidence of any conflicts between these two named plaintiffs and the other members of the proposed MFLSA class. The Court finds these named plaintiffs and the class members have identical interests in their desires to demonstrate Caribou store managers are non-exempt employees who are willfully misclassified as exempt by the defendant; the issue at the heart of this litigation. The Court once again rejects defendant's contentions that the individual-

---

12. The deadline for filing motions to amend the Complaint, as established in the Pretrial Scheduling Order issued by Magistrate Judge Noel on October 28, 2005, was March 1, 2006. There is no evidence in the record that plaintiffs sought to amend their Complaint prior to passing of this deadline, or that plaintiffs sought to amend the Scheduling Order to extend this deadline. Nor did plaintiffs attempt to file any such motion prior to the expiration of the deadline for filing any nondispositive motions, which occurred on October 1, 2006. It was not until the filing of the instant Motion for Class Certification on October 10, 2006, that plaintiffs expressed their

desire to expand the class definition to the Court; doing so only informally and within their legal memorandum in support of class certification. The Court declines plaintiffs' invitation to overlook these procedural failures. Plaintiffs' are the masters of their Complaint and by its express terms the class definition has been established. The Court will not reach beyond the established guidelines and deadlines of the Pretrial Scheduling Order, as amended, and engage in *sua sponte* modifications of the pleadings in this action. Accordingly, the Court finds the MFLSA class period asserted in this case includes the period from May 25, 2003 through the present.

ized nature of the exemption classification for each store manager creates inherent conflicts of interest between the named and class plaintiffs.

Thus, while the Court recommends Williams–Goldberg be denied status as a representative plaintiff in a MFLSA class, no such finding is made regarding Nerland and Geckler. Moreover, the common questions, interests, and generalized proof of the FLSA and MFLSA regarding the determination of whether or not the executive exemption applies to Caribou store managers as a group are unaltered by the Courts' finding regarding Williams–Goldberg's MFLSA class membership.

■■■■ Defendant also argues the named plaintiffs, as former store managers, lack standing to represent the class plaintiffs' interests in obtaining injunctive relief because none of the named plaintiffs are currently suffering injury. To have standing to sue, a named representative "must possess the same interest and suffer the same injury shared by all members of the class he represents." *Keele v. Wexler*, 149 F.3d 589, 592–93 (7th Cir.1998). Former employees are not per se prohibited from serving as class representatives for current employees. *See e.g., Mendez v. Radec Corp.*, 232 F.R.D. 78, 80 (W.D.N.Y.2005). The Court finds the remaining named plaintiffs possess the same interests and have suffered the same injuries as the proposed class members, whether former or current store managers. The named plaintiffs allege they were misclassified as exempt and deprived of overtime compensation, and they request a declaration of the illegality of Caribou's practices, an accounting, and back pay as remedies. The named plaintiffs allege the same violation and remedy for the rest of the class. *Cf. Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 152 (E.D.N.Y.1996) (finding in a retirement benefits action that all of the participants seek the same 'make-whole' relief claimed by the named plaintiffs, and that the distinction between active and retired employees was thus insufficient to bar certification). The Court finds the requirements of Rule 23(a)(4) have been satisfied.

### 3. Rule 23(b)

In addition to meeting the threshold criteria of Rule 23(a), a party seeking class certification must satisfy one of the requirements of Rule 23(b). Plaintiffs contend they satisfy the requirements under all three subdivisions of Rule 23(a). Defendant disagrees. While the Court is generally doubtful of plaintiffs' satisfaction of the requirements for certification pursuant to subsections (b)(1) and (b)(2), the Court shall not decide whether plaintiffs have satisfied the requirements of these subsections. The Court finds plaintiffs have met the requirements for certification under subsection (b)(3), and turns its attention to the requirements set forth thereunder.

Federal Rule of Civil Procedure 23(b)(3) provides that a court may certify a class action where the prerequisites under Rule 23(a) are met and (1) the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) the class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R. Civ.P. 23(b)(3).

#### a. Predominance

■■■■ There are no bright line rules to determine whether common questions predominate. *See Lockwood*, 162 F.R.D. at 580. Instead, a court must consider the facts of the case presented. *Id.* "Claim[s] will meet the predominance requirement when there exists generalized evidence

which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *Id.* Thus, a class action is appropriate when common questions representing the significant aspect of a case can be resolved in a single action. *See In re Workers' Comp.*, 130 F.R.D. 99, 108 (D.Minn.1990). The common question need not be dispositive of the entire action because "predominance" as used in the rule is not automatically equated with determinative. *Lockwood*, 162 F.R.D. at 580. As with the commonality and typicality requirements, the predominance inquiry is directed towards the issue of liability. *In re Select Comfort*, 202 F.R.D. at 610. If the liability issue is common to the class, common questions are held to predominate over individual questions. *See id.* Indeed, courts have often granted class certification despite individual differences in class members' damages. *See id.* (citing *Minnesota v. U.S. Steel Corp.*, 44 F.R.D. 559, 567 (D.Minn.1968); *White v. NFL*, 822 F.Supp. 1389, 1403–04 (D.Minn.1993)).

■ Once again, Caribou attempts to summarily dismiss plaintiffs' presentation of sufficient generalized evidence regarding plaintiffs' misclassification claims. However, as this Court has thoroughly discussed herein, generalized evidence of the propriety of defendant's uniform classification of its store managers as exempt from overtime compensation is generously present in this case. Accordingly, the Court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

*b. Superiority*

■ Rule 23(b) also requires that class actions be a superior means to adjudicate plaintiffs' claims. This requirement is satisfied only after the court has examined and weighed the following four factors: (A) the interest of members of the class in individually controlling the prosecution of separate action; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of undesirability of concentrating the litigation in a particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Fed. R.Civ.P. 23(b)(3).

Defendant once again argues that the individual issues of fact regarding whether or not each individual plaintiff is actually exempt under the MFLSA renders class certification untenable. The Court's rejection of this argument remains unchanged. Upon review of the cases cited by defendant in support of denying state class certification, the Court finds that none of the numerous cases cited overcomes the presence of the evidence in this case that Caribou's own internal practices include generalized consideration of store managers duties and responsibilities in determining the application of overtime exemptions to the group of Caribou employees as a whole.

Aside from defendant's individualized inquiry argument, there is little opposition to plaintiffs' assertions that the superiority factors all weigh in favor of certifying a Minnesota state class in this instance. Plaintiffs assert the preliminary damage calculations in this case range from a few thousand dollars to several tens-of-thousands of dollars. Plaintiffs contend these damage amounts, while significant, could be exceeded by the costs of individually litigating each claim. Plaintiffs thus argue a class action provides a superior method of adjudicating relatively small claims, because it may not be economically practicable to pursue the claims otherwise. More-

over, the abandonment of claims due to the cost of litigation exceeding potential recoveries would result in defendant's unjust enrichment. Plaintiffs also assert that class treatment affords current store managers an avenue for pursuing their claims while avoiding many of the risks associated with challenging their current employer. Finally, plaintiffs argue Caribou's removal of this action from the state court to this court diminishes any objections to a finding that this court is a desirable forum for plaintiffs' state law claims. Plaintiffs assert the interests of judicial resource conservation, the prevention of inconsistent results, and judicial efficiency all weigh in favor of finding a class action is a superior means to adjudicating the plaintiffs' MFLSA claims.

Upon careful consideration, the Court agrees that a class action is not only the superior method for proceeding in this matter, but might, under the circumstances, be the only viable means of seeking redress for many of these claims. The Court concludes the individual class members may not have the inclination or financial means to maintain individual state lawsuits against Caribou. The Court finds nothing unusual in this case that would cause judicial difficulties in management or class notification.[13] There is no evidence before the Court that members of the proposed Minnesota class have commenced independent lawsuits that assert claims arising from the matters presented in this case. Accordingly, the Court concludes that the superiority requirement of Rule 23(b)(3) is satisfied.

In sum, for the reasons set forth above, the Court concludes plaintiffs have satisfied the requirements of Federal Rule 23, and recommends that plaintiffs' motion for class certification be granted.

## C. Plaintiffs' Motion To Reopen The Opt–In Period

■■■■ Plaintiffs have moved the Court for an order that reopens the FLSA opt-in period. Plaintiffs contend Caribou has opened more than 150 stores since Magistrate Judge Noel conditionally certified the class, and seeks to reopen the opt-in period in order to send notices to these eligible opt-in plaintiffs. Plaintiff asserts the newly eligible opt-in plaintiffs are similarly situated to the plaintiffs who are already members of the collective action, and that they should be afforded the opportunity to join in the collective adjudication of their FLSA overtime compensation claims.

In response, Caribou acknowledges that it is a growing business, and that Caribou has promoted over 125 employees to the position of store manager since the expiration of the opt-in period on July 17, 2006. Caribou objects to the reopening of the opt-in period claiming any reopening will result in severe prejudice to Caribou and create both procedural and case-management difficulties for the Court.

The Court agrees with Caribou, and finds a reopening of the FLSA opt-in period would result in undue prejudice. The parties have amassed a significant body of evidence regarding Caribou, its business policies and practices, and the store managers it employed. Certification-related discovery closed over eight months ago, and Caribou then moved to decertify the conditional action on the grounds that the evidence failed to demonstrate the named and opt-in plaintiffs are similarly situated. The Court has now undertaken an extensive examination of this evidence, and has determined, as discussed at length herein, that the named and opt-in plaintiffs who

---

**13.** The Court recommends the consideration of establishing a bifurcated proceeding similar to the one recommended for the FLSA collective action. *See supra* at III.A.2.

submitted consent forms on or before the July 17, 2006 deadline, are similarly situated for the purposes of pursuing their FLSA claims collectively. The factual and employment circumstances of new Caribou employees who acquired the position of store manager following the close of certification discovery are unknown to Court. As such, the Court cannot adequately conduct an inquiry into whether or not these new store managers were subject to and impacted by the same generalized mechanism to apply the uniform exemption, the same job description, or the same expectation regarding weekly work hours.

To avoid a never-ending certification process, class certification discovery has a definite beginning and end. As previously mentioned, stage one of the similarly situated inquiry is not rigorous in determining whether to permit notice of the collective action to be sent to potential opt-in plaintiffs. However, the second stage is conducted after the close of the certification discovery period. *See Reed v. Mobile County School Sys.*, 246 F.Supp.2d 1227, 1230–31 (S.D.Ala.2003) (describing the more informed determination on the similarly situated issue should occur after the deadline for returning opt-in notices has passed). Indeed, this is the schedule that was established by Magistrate Judge Noel in this case.

Contrary to Plaintiffs' suggestions, the number of potential plaintiffs who have become eligible for opt-in status since the close of the opt-in period is not a significant factor in the Court's determination of whether the opt-in period should be reopened. To the extent the Court does consider this information, the cases cited by plaintiffs are distinguishable. For example, in *Raper v. State of Iowa*, 165 F.R.D. 89, 91–92 (S.D.Iowa 1996), the reopening of the opt-in period yielded seven members. In *Robinson–Smith v. Gov't*

*Employees Ins. Co.*, 424 F.Supp.2d 117, 123 (D.D.C.2006) the number was even smaller—only four additional plaintiffs opted in. According to plaintiffs own estimates, the potential number of new opt-in plaintiffs could reach 125 if the opt-in period were reopened. This number represents more than a thirty-three percent increase in the number of opt-in plaintiffs in the collective action.

Plaintiffs' reliance on *De Asencio* is also misplaced. There, the Court's decision to reopen the opt-in period was influenced by the defendants' failure to properly address hundreds of notices sent to potential opt-in plaintiffs during the initial notice period. *See* 342 F.3d 301, 312–13. No such evidence of malfeasance by Caribou is present in this case.

In sum, the FLSA opt-in period originally contemplated by the Court was intended to be a for a finite period. Following the expiration of this period the Court has conducted a rigorous examination of the evidence discovered and presented by the parties in order to determine whether the named and opt-in plaintiffs are sufficiently similarly situated. Based upon that evidence, and its application to the plaintiffs who are members of the collective action, the Court has concluded that they so situated.

Accordingly, the undersigned recommends that the Court decline plaintiffs' invitation to now alter the course of this litigation, some two years into its progression towards trial. To quote defendant's counsel "The train does come to a stop." (*See* Doc. No. 541 at 1). The Court finds that such a time has arrived in this case, and recommends plaintiffs request to reopen the opt-in period be denied.

## IV. Recommendation

Based upon the foregoing, and having considered the parties' oral arguments,

written memoranda, affidavits and exhibits, and the entire file and record herein, the **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion For Decertification (Doc. No. 400) be **DENIED;**

2. Plaintiffs' Motion for Class Certification (Doc. No. 472) be **GRANTED** to the extent that a state class be certified for the adjudication of plaintiffs' MFLSA claims with Nathan Nerland and James Geckler as the representative plaintiffs of the class, but that Daniel Williams–Goldberg be denied permission to proceed as a representative of the state class; and

3. Plaintiffs' Motion for Order to Re-open Opt-in Period to Eligible Class Members (Doc. No. 526) be **DE-NIED.**

April 6, 2007.